IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FAISEL SALEH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:16-cv-2782-G-BN |
| | § | |
| TIME WARNER CABLE, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This *pro se* discrimination action has been referred to the undersigned United States magistrate judge for pretrial management pursuant to 28 U.S.C. § 636(b) and a standing order of reference from Senior United States District Judge A. Joe Fish.

After filing its answer, *see* Dkt. No. 8, Defendant Time Warner Cable ("TWC") filed a Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings, *see* Dkt. No. 13. Plaintiff Faisel Saleh has responded to the motion, *see* Dkt. No. 14, and TWC has filed a reply brief, *see* Dkt. No. 21. Saleh also has moved to voluntarily dismiss this action without prejudice. *See* Dkt. No. 19. TWC has filed a response in opposition to that motion, *see* Dkt. No. 22, and Saleh has filed a reply brief, *see* Dkt. No. 23, and a motion to transfer this case to another district judge and magistrate judge, *see* Dkt. No. 25.

The undersigned issues the following findings of fact, conclusions of law, and recommendation that the Court should grant the Rule 12(c) motion but allow Saleh

leave to file an amended complaint if he wishes to do so; that, to the extent that Saleh still wishes to dismiss this action without prejudice, the Court should grant such a dismissal without condition; and that the Court should deny the motion to transfer.

## Applicable Background

Saleh, a former TWC customer, alleges that TWC discriminated against him on the basis of race, religion, and/or national origin, adding that his "name indicates that he is Muslim and possibly an Arab." Dkt. No. 3 at 5. Saleh supports his discrimination claim by alleging (1) that TWC "intentionally prevented the two services (internet and home phone) from working together, thereby causing [Saleh] to cancel both services"; (2) that he was forced to "wait over six months to get his refund"; (3) that TWC failed to take certain actions as promised – for example, "[m]entioning on November 24, 2015 that [Saleh] will receive a letter in the mail within 7-10 business days, and then neglecting to send the letter"; (4) that TWC sent two bills after Saleh cancelled ths services; and (5) that TWC subjected him to a debt collector and credit agency. *Id.* at 5-6. Saleh seeks $100 million in damages. *See id.* at 6.

Because Saleh paid the statutory filing fee, Saleh was responsible for serving – and did effect service of process on – TWC. After TWC moved for judgment on the pleadings, Saleh moved to amend his complaint and attached to his motion a proposed first amended complaint that is substantially similar to the initial complaint except that the proposed amendment specifies that Saleh also alleges breach of contract and fraud based on the same allegations. *See* Dkt. No. 17.

The Court struck the motion because it did not comply with the requirements

of the Court's November 17, 2016 Standing Order on Non-Dispositive Motions [Dkt. No. 10]. *See* Dkt. No. 18. That order noted that Saleh would be allowed to file a motion for leave to amend in compliance with the Standing Order once the Court resolved TWC's Rule 12(c) motion. *See id.* at 3.

On December 19, 2016, Saleh moved to dismiss this action without prejudice, to allow him to "refile the lawsuit more appropriately." Dkt. No. 19. The Court ordered briefing on that motion. *See* Dkt. No. 20. But, before the Court could rule on the motion, Saleh initiated a new *pro se* action in this Court by filing the proposed amended complaint mentioned above. *See Saleh v. Time Warner Cable Enters., LLC*, No. 3:17-cv-170-B-BH (N.D. Tex.), Dkt. No. 2. As Saleh is proceeding *in forma pauperis* in that action, United States Magistrate Judge Irma Carrillo Ramirez has recommended that his duplicative claims be dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B). *See id.*, Dkt. No. 7.

Saleh also has moved to have this case transferred to another district judge and magistrate judge. *See* Dkt. No. 26.

**Legal Standards and Analysis**

<u>TWC's Motion for Judgement on the Pleadings</u>

Rule 12(c) provides that, "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c).

> Although there is no specific language in Rules 7 or 12 of the Federal Rules of Civil Procedure that states when the pleadings close, the following is accepted by numerous federal courts as to when the pleadings close:

> Rule 7(a) provides that the pleadings are closed upon the filing of a complaint and an answer (absent a court-ordered reply), unless a counterclaim, cross-claim, or third-party claim is interposed, in which event the filing of a reply to a counterclaim, cross-claim answer, or third-party answer normally will mark the close of the pleadings.

*Davis v. Nissan Motor Acceptance Corp.*, No. 3:09-cv-869-L, 2009 WL 3363800, at *2 (N.D. Tex. Oct. 16, 2009) (quoting 5C CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367 at 213 (2004)).

"'A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.'" *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam)). The standard for dismissal on the pleadings under Rule 12(c) is the same as that for dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 209 (5th Cir. 2009); *accord Gentilello v. Rage*, 627 F.3d 540, 543-44 (5th Cir. 2010).

Under Rule 12(b)(6), the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.*

at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)). The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the '*factual* allegations' in the complaint,"

-5-

*Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson*, 135 S. Ct. at 347; emphasis added by *Smith*), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346. That rationale has even more force in this case, as the Court "must construe the pleadings of *pro se* litigants liberally." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

At this time, Saleh "is not required to plead a prima facie case based on discrimination," but, "at the pleading stage for purposes of Rules 8 and 12(b)(6), he must set forth allegations that would enable the court to reasonably infer that [TWC] discriminated against him" because of his race, religion, or national origin. *Lewis v. LSG Sky Chefs*, No. 3:14-cv-3107-M-BN, 2015 WL 935125, at *4 (N.D. Tex. Mar. 4, 2015) (quoting *Thornton v. Dallas ISD*, No. 3:13-cv-3012-P, 2014 WL 46398, at *3 (N.D. Tex. Jan.6, 2014) (in turn quoting *Nieman v. Hale*, No. 3:12-cv-2433-L, 2012 WL 3204990, at *4 (N.D. Tex. Aug. 8, 2012)); internal quotation marks omitted); *see, e.g.*, *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) ("Raj's complaint and speculation did not allege any facts, direct or circumstantial, that would suggest LSU's actions were based on Raj's race or national origin or that LSU treated similarly situated employees of other races or national origin more favorably. Because Raj has failed to raise his right to relief above the speculative level, we affirm the district court's dismissal of Raj's complaint under Rule 12(b)(6) for failure to state a claim."

(citation and internal quotation marks and bracket omitted)).

Saleh has not carried this burden. His allegations cannot be read to infer that any action by TWC was done because of Saleh's race, religion, or national origin. And to accept Saleh's only allegation invoking race, religion, or national origin – that his "name indicates that he is Muslim and possibly an Arab" – as a plausible explanation for the rather routine acts committed by TWC as alleged in the complaint would be to engage in mere speculation and to ignore an alternative, more obvious explanation – an explanation that appears on the face of the complaint. *See, e.g.*, Dkt. No. 3 at 2-3 (it is plausible that because, "[a]fter cancelling the service, [Saleh] was late in returning the equipment," "[TWC] turned [Saleh] in to a collection agency" and "sent [Saleh] two bills for service after the service had been cancelled"); *compare id., with Mohammad v. N.Y. State Higher Educ. Servs. Corp.*, No. 08-CV-4943 (JG)(LB), 2009 WL 1514635, at *5 (E.D.N.Y. June 1, 2009) ("Mohammad's allegations do not plausibily suggest that he is entitled to relief. Mohammad complains that his tax refunds were taken and his credit rating was damaged because of his Muslim name and because he is an Arab from the Middle East. However, the alternative, obvious explanation is that these actions were taken to satisfy a judgment entered against Mohammad nearly 20 years ago. That he was held accountable for these loans after September 11, 2001 is not plausibly related to his being an Arab or having a Muslim name, but rather is obviously based on his having returned to New York at approximately that time after having been away for over a decade. In short, if the respondent in [*Iqbal*] had not 'nudged [his] claims of ... discrimination across the line from conceivable to plausible,'

Mohammad has failed to get his claims anywhere close to that line, let alone over it." (citation omitted)).

The undersigned further observes that, to the extent that Saleh's discrimination allegations turn on Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.*, and/or a public accommodations theory, *see* Dkt. No. 3 at 2 ("Jurisdiction is proper in this court due to the existence of federal law 42 U.S.C. [§] 2000a, which prohibits discrimination based on race, religion, and national origin in places of public accommodations."), it does not seem that Title II applies to the provision of cable and internet services, *see, e.g.*, *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 540-45 (E.D. Va. 2003) ("[I]t is clear that the reach of Title II, however broad, cannot extend beyond actual physical facilities. Given Title II's sharp focus on actual physical facilities, such as inns, motels, restaurants, gas stations, theaters, and stadiums, it is clear that Congress intended the statute to reach only the listed facilities and other similar physical structures, not to 'regulate a wide spectrum of consensual human relationships.'" (quoting *Welsh v. Boy Scouts of Am.*, 993 F.2d 1267, 1270 (7th Cir. 1993))).

For these reasons, the Court should grant the Rule 12(c) motion and dismiss Saleh's claims. But that dismissal should be without prejudice to Saleh's ability to file an amended complaint.

Saleh asserts that he "has provided all the necessary information in his Original Compalint" because, according to his interpretation of the applicable law, "when an individual or an entity mistreats someone who is not the average white American, the

mistreatment is considered discrimination by default unless the alleged offender can prove otherwise." Dkt. No. 14 at 1-2. This assertion, which could be interpreted as Saleh's standing on his allegations as pleaded, and however misguided it may be, at least in part is why TWC argues that leave to amend should be denied. *See* Dkt. No. 21 (citing *Gentilello v. Rege*, 627 F.3d 540, 546 (5th Cir. 2010)).

But the posture of this case is distinguishable from *Gentilello v. Rege*. In that case, in which the motion for judgment on the pleadings was filed much later in the proceedings than here, the plaintiff – represented by counsel – had amended once already and was seeking leave to amend "more than a year after ... initially amend[ing] his complaint" and after the deadline to amend pleadings established by the court's scheduling order. *Gentilello*, 627 F.3d at 546.

Here, Saleh has not been allowed to seek leave to amend. *See* Dkt. No. 18. The undersigned therefore recommends that the Court allow Saleh one opportunity to replead his claims in this action. *See Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (nothing that, "[a]lthough a court may dismiss [a] claim [under Rule 12(c)], it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so" (citations omitted)); *accord Meek v. Gold Coast Skydivers, Inc.*, No. 2:15cv4-DPJ-FKB, 2016 WL 81812, at *9 (S.D. Miss. Jan. 7, 2016).

<u>Saleh's Motion to Dismiss Without Prejudice</u>

Because an answer has been filed, and because TWC has not stipulated to the

dismissal of this action, Saleh's motion to dismiss is governed by Federal Rule of Civil Procedure 41(a)(2), and "this 'action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.'" *Nieman v. Hale*, No. 3:12-cv-2433-L, 2015 WL 12463175, at *2 (N.D. Tex. June 18, 2015) (quoting FED. R. CIV. P. 41(a)(2)).

> Ordinarily, a motion for voluntary dismissal "should be freely granted unless the non-moving party will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 317 (5th Cir. 2002) (citation omitted). Rule 41(a)(2) evinces a preference for dismissal without prejudice, as it provides, "[u]nless the order states otherwise, a dismissal under this paragraph (2) is without prejudice." *Id.* Legal prejudice will exist when an affirmative defense would be lost. *Elbaor*, 279 F.3d at 318. Legal prejudice may also exist if the nonmovant could lose a forum non conveniens defense. *Ikospentakis v. Thalassic S. S. Agency*, 915 F.2d 176, 179 (5th Cir. 1990). Finally, legal prejudice may exist if "a plaintiff fails to seek dismissal until a late stage of trial, after the defendant has exerted significant time and effort." *Davis v. Huskipower Outdoor Equip. Co.*, 936 F.2d 193, 199 (5th Cir. 1991). Whether legal prejudice exists under these circumstances is a determination to be made by the court using its sound discretion. If the court determines that legal prejudice exists, it may "refuse to grant a voluntary dismissal." *Id.* (citations omitted). "[T]he mere prospect of a second lawsuit is not enough prejudice to a defendant to warrant denial of a motion to dismiss without prejudice." *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330 (5th Cir. 2003).

*Id.*; *see also Harris v. Devon Energy Prod. Co., L.P.*, 500 F. App'x 267, 268 (5th Cir. 2012) (per curiam) ("[P]lain legal prejudice does not include the mere prospect of a second suit or the mere incursion of expense. If the district court determines that an unconditional dismissal will cause the defendant plain legal prejudice, it may either deny the motion to dismiss or impose conditions that will cure the prejudice. The latter course may include dismissing the suit with prejudice." (citations omitted)).

Against these standards, the undersigned cannot find that TWC will be legally prejudiced if the Court grants Saleh's Rule 41(a)(2) motion and dismisses this action without prejudice. And, while TWC requests that the Court condition any dismissal without prejudice on Saleh's paying the attorneys' fees TWC incurred to defend this suit before being allowed to file a second, similar suit, *see* Dkt. No. 22, this requests must be considered against the United States Court of Appeals for the Fifth Circuit's recent discussion of possible conditions on a Rule 41(a)(2) voluntary dismissal:

> "By its very language 41(a)(2) gives the court power to grant or deny a motion made under the rule and 'upon such terms and conditions as the court deems proper.'" "[We] follow the traditional principle that dismissal should be allowed unless the defendant will suffer some plain prejudice other than the mere prospect of a second lawsuit." Thus, "[t]he purpose of authorizing the court to place conditions on a voluntary dismissal is to prevent unfair prejudice to the other side in the case."
>
> "In ruling on motions for voluntary dismissals, the district court should impose only those conditions which will alleviate the harm caused to the defendant." Typical examples of permissible conditions include payment of costs and attorney's fees. Other conditions could include "making available to defendant at second suit certain records, producing certain witnesses at trial, and paying one-half cost of defendant bringing in other witnesses."
>
> In contrast, a condition limiting the plaintiff's right to refile to the original forum is "not the type usually found in Rule 41(a)(2) dismissals." Instead of concerns about cost or reproducing discovery, the "only alleged prejudice in this case, upon refiling," absent the forum limitation imposed by the district court, is that "plaintiffs may gain a tactical advantage." Yet, "[i]t is no bar to dismissal that plaintiff may obtain some tactical advantage thereby." Indeed, the "fact that a plaintiff may gain a tactical advantage by dismissing its suit without prejudice and refiling in another forum is not sufficient legal prejudice to justify denying a motion for voluntary dismissal."
>
> If the possibility of tactical advantage does not justify the denial of a voluntary dismissal, likewise the possibility of tactical advantage should

> not justify the imposition of a refiling condition. In sum, the potential for forum-shopping does not count as legal prejudice.

*Bechuck v. Home Depot U.S.A., Inc.*, 814 F.3d 287, 298-99 (5th Cir. 2016) (citations and footnotes omitted).

Accordingly, neither the short pendency of this action, nor the risk of a second action, nor TWC's incursion of expenses to defend this suit, nor even any desire by Saleh to refile this action hoping that it will be assigned to a different judge of this Court amounts to plain legal prejudice to TWC that requires that the Court either deny the motion or impose conditions that will cure the prejudice. *See, e.g., Elbaor*, 279 F.3d at 317 ("[F]aced with a Rule 41(a)(2) motion the district court should first ask whether an unconditional dismissal will cause the non-movant to suffer plain legal prejudice. If not, it should generally, absent some evidence of abuse by the movant, grant the motion." (footnote omitted)). The Court should therefore grant Saleh's Rule 41(a)(2) motion without condition.

<u>Saleh's Motion to Transfer</u>

Saleh requests that this case be transferred to another district judge and magistrate judge based on his belief that he has been treated unfairly. *See* Dkt. No. 25. Saleh's complaints are not consistent with the reality of a busy federal court with a substantial *pro se* and prisoner docket. For example, he alleges that "the Court is refusing to rule on [a] motion" because it was filed "over one-and-a-half months ago." *Id.* at 2. His protestations aside, nothing in this motion requires the undersigned or Judge Fish to consider whether recusal is appropriate under 28 U.S.C. § 455. *Cf.*

*Cooper v. Dallas Police Ass'n*, No. 3:05-cv-1778-N, 2013 WL 5786437, at *5 (N.D. Tex. Oct. 28, 2013) (noting that "'adverse rulings in a case are not an adequate basis for demanding recusal'" and that "the imposition of sanctions is a judicial act and not a proper basis for recusal" (quoting *United States v. MMR Corp.*, 954 F.2d 1040, 1045 (5th Cir. 1992), and citing *United States v. Rhodes*, 332 F. Supp. 2d 965, 970 (N.D. Tex. 2004))).

**Recommendation**

The Court should grant Defendant Time Warner Cable's Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings [Dkt. No. 13] but allow Plaintiff Faisel Saleh leave to file an amended complaint if he wishes to do so; to the extent that Saleh still wishes to dismiss this action without prejudice, *see* Dkt. No. 19, the Court should grant such a dismissal without condition; and the Court should deny Saleh's motion to transfer [Dkt. No. 25]. If the Court accepts these recommendations, the undersigned will continue to manage this action for pretrial purposes, to determine how Saleh wishes to proceed.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation

-14-

where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 17, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    DATED: February 17, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE