IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FAISEL SALEH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:16-cv-2782-G-BN |
| | § | |
| TIME WARNER CABLE, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This *pro se* action has been referred to the undersigned United States magistrate judge for pretrial management pursuant to 28 U.S.C. § 636(b) and a standing order of reference from Senior United States District Judge A. Joe Fish.

On March 13, 2017, the Court, accepting the undersigned's findings, conclusions, and recommendation, granted Defendant Time Warner Cable's ("TWC") Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings but allowed Plaintiff Faisel Saleh leave to file an amended complaint. *See* Dkt. No. 30; *see also* Dkt. No. 27. Saleh filed an amended complaint later the same day, *see* Dkt. No. 31, and TWC has filed an answer, *see* Dkt. No. 35.

TWC now again moves for judgment on the pleadings under Rule 12(c). *See* Dkt. No. 41. Saleh has filed a response in opposition, *see* Dkt. No. 42, and TWC has filed a reply brief, *see* Dkt. No. 47.

The undersigned issues the following findings of fact, conclusions of law, and

recommendation that the Court should grant the renewed Rule 12(c) motion and dismiss this action with prejudice.

**Legal Standards**

Rule 12(c) provides that, "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c).

> Although there is no specific language in Rules 7 or 12 of the Federal Rules of Civil Procedure that states when the pleadings close, the following is accepted by numerous federal courts as to when the pleadings close:
>
>> Rule 7(a) provides that the pleadings are closed upon the filing of a complaint and an answer (absent a court-ordered reply), unless a counterclaim, cross-claim, or third-party claim is interposed, in which event the filing of a reply to a counterclaim, cross-claim answer, or third-party answer normally will mark the close of the pleadings.

*Davis v. Nissan Motor Acceptance Corp.*, No. 3:09-cv-869-L, 2009 WL 3363800, at *2 (N.D. Tex. Oct. 16, 2009) (quoting 5C CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367 at 213 (2004)).

"'A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.'" *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam)). Such a motion is therefore "specifically designed to facilitate" an inquiry into "the interpretation and construction of the [law]" where "[t]he facts of the instant case are not in dispute." *Hebert Abstract*, 914 F.2d at 76 (citation omitted)).

The standard for dismissal on the pleadings under Rule 12(c) is the same as that for dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 209 (5th Cir. 2009); *accord Gentilello v. Rage*, 627 F.3d 540, 543-44 (5th Cir. 2010). Under Rule 12(b)(6), the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007); *accord Fu v. Reno*, No. 3:99-cv-981-L, 2000 WL 1644490, at *5 (N.D. Tex. Nov. 1, 2000) ("The court reviews motions for judgment on the pleadings solely on the basis of the allegations in the pleadings and accepts all allegations as true." (citing *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991))).

To state a claim upon which relief may be granted, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir.

2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id*. But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)). The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the '*factual* allegations' in the complaint," *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson*, 135 S. Ct. at 347; emphasis added by *Smith*), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346. That rationale has even more force in this case, as the Court "must construe the pleadings of *pro se* litigants liberally." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion.

*Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *United States v. GSD&M Idea City LLC*, No.

3:11-cv-1154-O, 2014 WL 11320447, at *2 (N.D. Tex. June 10, 2014) (applying that standard to motions under Rule 12(c)).

## Analysis

The Court previously set out the applicable background of this action. *See Saleh v. Time Warner Cable*, No. 3:16-cv-2782-G-BN, 2017 WL 979061 (N.D. Tex. Feb. 17, 2017), *rec. adopted*, 2017 WL 958614 (N.D. Tex. Mar. 13, 2017). The undersigned need not repeat those details here and will instead focus on the allegations in Saleh's amended complaint. *See* Dkt. No. 31.

In the complaint as amended, Saleh, a former TWC customer, again alleges that TWC discriminated against him on the basis of race, religion, and/or national origin, asserting that his "name indicates that he is Muslim and possibly an Arab" and that "[a]ll of the offenses committed by [TWC] are based on discrimination, as the average American customer does not get subjected to them by [TWC]." Dkt. No. 31 at 5; *see also id.* at 7 ("For example, the average American customer does not wait over six months after returning the equipment to receive his refund while repeatedly receiving false promises of the refund, as was done to [Saleh] by [TWC]. As another example, the average American customer that does not owe anything does not get turned in to a collection agency as [TWC] did with [Saleh]. When such acts of mistreatment – that are not committed against the average American customer – are committed against a person who has the name of a Muslim or an Arab, those acts of mistreatment are acts of discrimination.").

Saleh further asserts breach-of-contract claims based on TWC's alleged failure to send Saleh a refund as promised. *See id.* at 5-6. And he asserts fraud claims based on TWC's sending "four separate bills after services were cancelled." *Id.* at 6.

Taking up the discrimination claim first, while Saleh "is not required to plead a prima facie case based on discrimination" at this time, "at the pleading stage for purposes of Rules 8 and 12(b)(6), he must set forth allegations that would enable the court to reasonably infer that [TWC] discriminated against him" because of his race, religion, or national origin. *Lewis v. LSG Sky Chefs*, No. 3:14-cv-3107-M-BN, 2015 WL 935125, at *4 (N.D. Tex. Mar. 4, 2015) (quoting *Thornton v. Dallas ISD*, No. 3:13-cv-3012-P, 2014 WL 46398, at *3 (N.D. Tex. Jan. 6, 2014) (in turn quoting *Nieman v. Hale*, No. 3:12-cv-2433-L, 2012 WL 3204990, at *4 (N.D. Tex. Aug. 8, 2012)); internal quotation marks omitted); *see, e.g.*, *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) ("Raj's complaint and speculation did not allege any facts, direct or circumstantial, that would suggest LSU's actions were based on Raj's race or national origin or that LSU treated similarly situated employees of other races or national origin more favorably. Because Raj has failed to raise his right to relief above the speculative level, we affirm the district court's dismissal of Raj's complaint under Rule 12(b)(6) for failure to state a claim." (citation, internal quotation marks, and bracket omitted)).

Saleh again fails to carry this burden. The allegations in the amended complaint cannot be read to infer that any action by TWC was done *because of* Saleh's race,

religion, or national origin. And to accept Saleh's only allegation invoking race, religion, or national origin – that his "name indicates that he is Muslim and possibly an Arab" – as a plausible explanation for the rather routine acts committed by TWC that are alleged in the complaint would be to engage in mere speculation and to ignore an alternative, more obvious explanation – an explanation that appears on the face of the complaint. *See, e.g.*, Dkt. No. 31 at 2-3 (it is plausible that because, "[a]fter cancelling the service, [Saleh] was late in returning the equipment," "[TWC] turned [Saleh] in to a collection agency" and "sent [Saleh] two bills for service after the service had been cancelled"); *compare id.*, *with Mohammad v. N.Y. State Higher Educ. Servs. Corp.*, No. 08-CV-4943 (JG)(LB), 2009 WL 1514635, at *5 (E.D.N.Y. June 1, 2009) ("Mohammad's allegations do not plausibily suggest that he is entitled to relief. Mohammad complains that his tax refunds were taken and his credit rating was damaged because of his Muslim name and because he is an Arab from the Middle East. However, the alternative, obvious explanation is that these actions were taken to satisfy a judgment entered against Mohammad nearly 20 years ago. That he was held accountable for these loans after September 11, 2001 is not plausibly related to his being an Arab or having a Muslim name, but rather is obviously based on his having returned to New York at approximately that time after having been away for over a decade. In short, if the respondent in [*Iqbal*] had not 'nudged [his] claims of ... discrimination across the line from conceivable to plausible,' Mohammad has failed to get his claims anywhere close to that line, let alone over it." (citation omitted)).

The undersigned further observes that, to the extent that Saleh's discrimination

allegations turn on Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.*, and/or a public accommodations theory, *see* Dkt. No. 31 at 2 ("Jurisdiction is proper in this court due to the existence of federal law 42 U.S.C. [§] 2000a, which prohibits discrimination based on race, religion, and national origin in places of public accommodations."), it does not seem that Title II applies to the provision of cable and internet services, *see, e.g.*, *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 540-45 (E.D. Va. 2003) ("[I]t is clear that the reach of Title II, however broad, cannot extend beyond actual physical facilities. Given Title II's sharp focus on actual physical facilities, such as inns, motels, restaurants, gas stations, theaters, and stadiums, it is clear that Congress intended the statute to reach only the listed facilities and other similar physical structures, not to 'regulate a wide spectrum of consensual human relationships.'" (quoting *Welsh v. Boy Scouts of Am.*, 993 F.2d 1267, 1270 (7th Cir. 1993))).

As for the breach-of-contract claims, Saleh does not allege that TWC failed to issue a refund. *See* Dkt. No. 31 at 4 (affirming that a refund was received on May 31, 2016). Instead, Saleh bases his four, separate contract claims on TWC's alleged failure to act as promised "in a telephone conversation" – by issuing the refund within a certain number of days or by "giv[ing] the refund by a [certain] method." *See, e.g., id.* at 5 ("Mentioning on November 24, 2015 that [Saleh] will receive a letter in the mail within 7-10 business days regarding the refund, and then neglecting to send the letter.").

"For there to be a valid contract, there must be (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Stanissis v. DynCorp Int'l LLC*, Nos. 3:14-cv-2736-D & 3:15-cv-2026-D, 2015 WL 9478184, at *8 (N.D. Tex. Dec. 29, 2015) (citations and quotation marks omitted).

Here, Saleh's contract-based claims should be dismissed because he fails to allege "facts and circumstances surrounding the parties' conduct" – his conversations with TWC customer service representatives – "from which the court can reasonably infer mutual intent to contract." *Id.* (citing *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972) ("[A contract implied in fact] arises from the acts and conduct of the parties, it being implied from the facts and circumstances that there was a mutual intention to contract.")).

Saleh's conclusory claims of fraud do no better. As to these claims, he asserts, in total, that "[t]he third cause of action is fraud. There were four counts of fraud, and they are mentioned in counts 7-10" – "[s]ending Plaintiff four separate bills after services were cancelled." Dkt. No. 31 at 6.

To plead common law fraud in Texas, a plaintiff must allege facts that give rise to a plausible claim

> "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury."

*Allstate Ins. Co. v. Receivable Fin. Co., L.L.C.*, 501 F.3d 398, 406 (5th Cir. 2007) (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001)).

Here, Saleh has not alleged – and the facts offered in the amended complaint actually support the opposite inference – that he acted in reliance on the bills allegedly sent by TWC "after services were cancelled" by, for example, paying those bills. He therefore has not stated a plausible common law fraud claim. *Cf. id.* ("A lack of sufficient evidence showing reliance will necessarily be fatal to the fraud claim." (citing *Rowntree v. Rice*, 426 S.W.2d 890, 893 (Tex. App. – San Antonio 1968, writ ref'd n.r.e.) ("[P]laintiff in a fraud suit must plead and prove on the merits that he was ignorant of the falsity of defendant's representations and in fact relied on same."))).

Because the undersigned is recommending dismissal of Saleh's claims after the Court allowed him leave to amend, the Court should dismiss this action with prejudice. *See, e.g., Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (noting that, "[a]lthough a court may dismiss [a] claim [under Rule 12(c)], it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so" (citations omitted)); *accord Meek v. Gold Coast Skydivers, Inc.*, No. 2:15cv4-DPJ-FKB, 2016 WL 81812, at *9 (S.D. Miss. Jan. 7, 2016).

**Recommendation**

The Court should grant Defendant Time Warner Cable's renewed Federal Rule of Civil Procedure 12(c) motion for judgment on the pleading, *see* Dkt. No. 41, and

dismiss this action with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 26, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE